KATHLEEN DORSEY, Petitioner-Appellant v. UNC-WILMINGTON, Respondent-Appellee

No. COA95-169

(Filed 19 March 1996)

**1. Labor and Employment § 121 (NCI4th)— black job applicant—disparate treatment claim—absence of discrimination**

Substantial evidence in the whole record supported the Personnel Commission's decision to reject petitioner's "disparate treatment" claim where it tended to show that the candidate who

was employed by respondent had more years of relevant work experience than petitioner, received better performance reviews and better recommendations, and two other candidates for the job would have been chosen over petitioner had respondent's first choice not taken the job.

**Am Jur 2d, Job Discrimination §§ 1, 126, 304, 2409, 2707, 2733.**

**Recovery of damages as remedy for wrongful discrimination under state or local civil rights provisions. 85 ALR3d 351.**

2. **Labor and Employment § 121 (NCI4th)— black job applicant—disparate impact analysis—absence of discrimination**

The trial court did not err in finding that the evidence supported the Personnel Commission's determination that petitioner had not been discriminated against because of her race under "disparate impact" analysis, since the evidence simply did not show that any of respondent's hiring practices caused minority applicants, and more specifically black applicants, to be excluded from jobs or promotions.

**Am Jur 2d, Job Discrimination §§ 2707, 2733.**

**Recovery of damages as remedy for wrongful discrimination under state or local civil rights provisions. 85 ALR3d 351.**

3. **Attorney General § 6 (NCI4th)— dual role served by Attorney General's office—no prejudice to petitioner**

There was no evidence to support petitioner's claim that because respondent was represented before the State Personnel Commission by a senior deputy attorney general, and an assistant attorney general served as legal advisor to the Commission, there was a potential for conflict of interest and bias sufficient to deprive her of an impartial decision-maker, delay the resolution of the claims, and deny her constitutional rights.

**Am Jur 2d, Parties § 141.**

**What constitutes representation of conflicting interests subjecting attorney to disciplinary action. 17 ALR3d 835.**

**Representation of conflicting interests as disqualifying attorney from acting in a civil case. 31 ALR3d 715.**

**DORSEY v. UNC-WILMINGTON**

[122 N.C. App. 58 (1996)]

Appeal by petitioner from order entered 8 August 1994 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 13 November 1995.

*McSurely and Dorosin, by Alan McSurely and Mark Dorosin, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Anne J. Brown, for respondent-appellee.*

MARTIN, John C., Judge.

Petitioner, Kathleen Dorsey, appeals from an order of the superior court affirming the decision of the State Personnel Commission ("Commission") to reject Ms. Dorsey's claim that she had been discriminated against on the basis of her race in connection with an employment promotion decision by respondent, the University of North Carolina at Wilmington ("UNC-W").

The record shows that Ms. Dorsey, who is black, has been employed as a secretary in the Office of Legal Affairs and Compliance at UNC-W since 1983 and, in 1992, was secretary to the University's general counsel. In early 1992, the Administrative Assistant to Chancellor James Leutze gave notice of her intent to resign. The vacancy in the position was announced to all UNC-W employees, fourteen of whom, including Ms. Dorsey, applied for the position. The position was classified at salary grade 63; Ms. Dorsey's position was classified at salary grade 59.

The applications were reviewed by the Chancellor's staff and six candidates, including Ms. Dorsey, were selected for interviews after consultation with the director of UNC-W's Human Resources Department. Four of the candidates were white and two were black. After reviewing the applications, personally interviewing each candidate, and considering staff recommendations, Chancellor Leutze chose Lynne Goodspeed, who is white, for the position.

Ms. Dorsey alleged the decision had been racially discriminatory and followed UNC-W's grievance procedures. After her grievance was denied, she filed a contested case petition with the Office of Administrative Hearings. After a hearing, the Administrative Law Judge made extensive findings of fact and concluded that Ms. Dorsey had established a *prima facie* case of discrimination, that UNC-W had rebutted the *prima facie* case by articulating legitimate nondiscriminatory reasons for not selecting her, and that Ms. Dorsey had not

**DORSEY v. UNC-WILMINGTON**

[122 N.C. App. 58 (1996)]

proven that the nondiscriminatory reason was merely a pretext for illegal discrimination. The Administrative Law Judge issued a recommended decision that the decision to promote Ms. Goodspeed be left undisturbed, but that UNC-W consider reclassifying Ms. Dorsey's current position to pay grade 63.

The State Personnel Commission adopted the Administrative Law Judge's recommended findings of fact, with three minor amendments, and his recommended conclusions of law, with the exception of the conclusion of law pertaining to the salary reclassification of Ms. Dorsey's current position, which it determined not to be supported by substantial evidence. The Commission affirmed UNC-W's decision not to select Ms. Dorsey for the administrative assistant position.

Ms. Dorsey petitioned for judicial review, pursuant to G.S. § 150B-45, of the order of the State Personnel Commission. Upon her motion and with consent of UNC-W, the superior court vacated the Commission's decision on the grounds that the Commission had made its ruling without having before it the entire official record of the case and remanded the case to the Commission with instructions to "consider all exceptions properly filed in this matter after a review of the complete official record, and make a final administrative decision in accordance with applicable law."

Upon remand, the Commission again issued a decision and order affirming UNC-W's decision not to select Ms. Dorsey. Ms. Dorsey petitioned for judicial review of the Commission's order, alleging that the order was affected by error of law, was unsupported by substantial evidence, and was arbitrary and capricious. Upon review, the superior court determined that the Commission's decision was not in violation of constitutional provisions; was not in excess of its statutory authority or jurisdiction; was not made upon unlawful procedure; was not affected by other error of law; was not arbitrary or capricious; and was supported by substantial evidence in view of the entire record. Ms. Dorsey now appeals to this Court.

I.

Chapter 150B of the North Carolina General Statutes, the North Carolina Administrative Procedure Act, governs trial and appellate court review of administrative agency decisions. Pursuant to G.S. § 150B-51(b), the superior court may reverse or modify an administrative agency decision if the substantial rights of the petitioners have

been prejudiced because the agency's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Although G.S. § 150B-51(b) lists the grounds upon which a court may reverse or modify an administrative agency decision, the proper standard of review to be employed by the court depends upon the nature of the alleged error. *Amanini v. N.C. Dept. of Human Resources,* 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). If a petitioner asserts that the administrative agency decision was based on an error of law, then "de novo" review is required. *Id.* " 'De novo' review requires a court to consider a question anew, as if not considered or decided by the agency." *Id.* (citing *Black's Law Dictionary* 435 (6th Ed. 1990)). "The court may 'freely substitute its own judgment for that of the agency.' " *Friends of Hatteras Island v. Coastal Resources Comm.,* 117 N.C. App. 556, 567, 452 S.E.2d. 337, 344 (1995) (quoting *Brooks, Commissioner of Labor v. Grading Co.,* 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981)).

On the other hand, if a petitioner asserts that the administrative agency decision was not supported by the evidence, or was arbitrary or capricious, then the court employs the "whole record" test. *Amanini,* 114 N.C. App. 668, 674, 443 S.E.2d 114, 118. The "whole record" test requires the court to examine all competent evidence comprising the "whole record" in order to ascertain if substantial evidence therein supports the administrative agency decision. *Id.* "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." *Walker v. N.C. Dept. of Human Resources,* 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990), *disc. review denied,* 328 N.C. 98, 402 S.E.2d 430 (1991) (citing *Joyce v. Winston-Salem State University,* 91 N.C. App. 153, 370 S.E.2d 866, *cert. denied,* 323 N.C. 476, 373 S.E.2d 862 (1988)). The standard of review for an appellate court upon an appeal from an

**DORSEY v. UNC-WILMINGTON**

[122 N.C. App. 58 (1996)]

order of the superior court affirming or reversing an administrative agency decision is the same standard of review as that employed by the superior court. *In re Appeal of Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254 (1995).

## II.

**[1]** By her first and third assignments of error, Ms. Dorsey disputes the superior court's finding that the decision of the Commission to reject her claim of "disparate treatment" against UNC-W was supported by the record. Ms. Dorsey contends that this finding was in error because UNC-W (1) failed to produce a legitimate nondiscriminatory reason for rejecting her and hiring Ms. Goodspeed, and (2) relied only on "subjective and pretextual" qualifications in its hiring process. Her argument challenges the sufficiency of the record evidence, thus the applicable standard of review is the "whole record" test.

When, as in the present case, an employee raises a claim of "disparate treatment" in an employment promotion decision, she is asserting that the employer specifically treated her less favorably than other employees. *N.C. Dept. of Correction v. Hodge*, 99 N.C. App. 602, 611, 394 S.E.2d 285, 290 (1990). According to "disparate treatment" analysis, once the complaining employee meets her initial burden of proving, by a preponderance of the evidence, a *prima facie* case of such "disparate treatment", the employer then has the burden of articulating some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* The employer's burden is satisfied if it simply produces evidence that it hired a better-qualified candidate. *Id.* However, the employee can ultimately prevail in her claim of "disparate treatment" if she can prove that the employer's claim to have hired a better-qualified applicant is pretextual by showing that she was, in fact, better-qualified than the person chosen for the job. *Id.* at 613, 394 S.E.2d at 291.

In the present case, the record contains substantial evidence that Ms. Goodspeed was, in fact, better-qualified for the position than was Ms. Dorsey. The advertised qualifications for the position, as contained in the notice for applications, were:

ADMINISTRATIVE ASSISTANT I Serves as office manager responsible for supervision of clerical staff, budgeting, accounting, and purchasing functions. Performs chief executive level secretarial duties with high degree of accuracy and efficiency. Plans and

coordinates meetings including travel and room accommodations, agenda, and record keeping. Requires proficiency in shorthand, effective written and oral communication skills, experience in maintaining a travel and appointment calendar (preferably using calendar software), and the ability to deal effectively and tactfully under pressure with many constituencies. Requires high school and four years progressively responsible secretarial or administrative office management experience. Secretarial science degree or CPS preferred. Word-Perfect and VAX administrative systems experience necessary.

In making his final decision, Chancellor Leutze stated that the principal differentiating factors were to select that individual who would best:

*match the position in terms of directly related job experience;

*be able to handle a variety of situations and constituents with professionalism, calmness, and control;

*exhibit appropriate interactional and communication skills necessary to represent me in contacts with senior administrative officers of the University as well as external constituents; and

*be able to undertake management of the office and supervision of subordinate staff.

Ms. Goodspeed had more than fourteen years job experience in executive assistant or equivalent positions, which was directly related to the position for which she applied. At the time of her selection, she had worked for approximately three years at UNC-W, during which time her performance was evaluated as exceptional. Her experience at UNC-W included a temporary assignment for approximately one year as a full-time secretary in the Chancellor's office, where she worked primarily with the Chancellor's administrative assistant, Andrea Williams, who was leaving. Ms. Goodspeed actually performed Ms. Williams' duties during an extended period of time when Ms. Williams was absent from work. As a result, the Chancellor had a first-hand opportunity to observe Ms. Goodspeed's secretarial abilities, professionalism, calmness and interactional and communicative skills, all of which he considered, according to his testimony, to be very good. Ms. Goodspeed also received highly favorable recommendations from Ms. Williams and from the Special Assistant to the Chancellor, Mark Lanier.

**DORSEY v. UNC-WILMINGTON**

[122 N.C. App. 58 (1996)]

In contrast, Ms. Dorsey had fewer years of work experience than Ms. Goodspeed and her experience was less relevant to the position for which she applied, i.e., she had not worked in equivalent employment to the position of administrative assistant. Her performance evaluations while at UNC-W, although good, were not as good as Ms. Goodspeed's. Several persons for whom she had previously worked while at UNC-W advised the Chancellor that Ms. Dorsey was somewhat difficult to get along with and was sometimes tense and irritable. Indeed, Chancellor Leutze testified that had Ms. Goodspeed not been available to fill the administrative assistant position, two other candidates, both of whom had served in higher level administrative positions, would have been preferable to Ms. Dorsey. Accordingly, we agree with the superior court's determination that substantial evidence in the whole record supports the Commission's decision to reject Ms. Dorsey's "disparate treatment" claim.

### III.

[2] In support of her second assignment of error, Ms. Dorsey argues that the superior court erred in finding the evidence supported the Commission's determination that Ms. Dorsey had not been discriminated against because of her race under "disparate impact" analysis. The appropriate standard of review is again the "whole record" test.

The elements of a "disparate impact" claim are prescribed by 42 U.S.C. § 2000e-2(k)(1)(A), which states:

> An unlawful employment practice based on disparate impact is established under this title only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact . . . .

In *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 994, 101 L.Ed.2d 827, 845 (1988), our U.S. Supreme Court held that:

> The plaintiff must begin by identifying the specific employment practice that is challenged . . . . Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.

In the present case, Ms. Dorsey's evidence simply did not show that any of UNC-W's hiring practices caused minority applicants, and

more specifically, black applicants, to be excluded from jobs or promotions. Indeed, there is substantial evidence in the record indicating a concerted effort by UNC-W to hire and promote minorities to secretarial and administrative positions, and that these efforts have, in fact, resulted in a substantial minority work force in these positions. Ms. Dorsey's argument is overruled.

## IV.

By her fourth assignment of error, Ms. Dorsey argues that the superior court erred in affirming the Commission's decision when, according to her argument, the Commission failed to state specific reasons for not adopting the Administrative Law Judge's recommended decision with respect to reclassifying her position for pay purposes. Although we find no merit in her argument, it is unnecessary to address it. Ms. Dorsey did not petition the superior court for review of the Commission's decision on this ground. This Court will not decide issues which have not been presented in the trial court. *See* N.C.R. App. P. 10(b); *White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983).

## V.

[3] By her fifth and final assignment of error, Ms. Dorsey contends that the superior court erred by its failure to find a violation of her rights to justice without favor or delay under Article I, Section 18 of the North Carolina Constitution. She argues that because UNC-W was represented before the State Personnel Commission by a senior deputy attorney general, and an assistant attorney general served as legal advisor to the Commission, there was a potential for conflict of interest and bias sufficient to deprive her of an impartial decisionmaker, delay the resolution of her claims, and deny her constitutional rights.

Because this assignment of error raises a question of law, we review *de novo* the question of whether Ms. Dorsey's constitutional rights were violated due to the alleged dual legal representation by members of the Attorney General's office. *Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254; *Amanini*, 114 N.C. App. 668, 443 S.E.2d 114.

Under G.S. § 114-2(2), it is the duty of this State's Attorney General "[t]o represent all State departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State." Thus, both UNC-W, as a constituent member of the State's university system, and the

Commission, are entitled to legal representation and advice from the Attorney General's Office. In similar circumstances, we have held that no *per se* violation of due process arises from such a combination of advisory function and advocacy function in the absence of a showing of actual bias or unfair prejudice. *See Hope v. Charlotte-Mecklenburg Board of Education*, 110 N.C. App. 599, 430 S.E.2d 472 (1993) (absent a showing of actual bias or unfair prejudice, rejected argument by petitioner, a dismissed teacher, that her right to due process was violated because the attorney advising the board of education and the attorney presenting the case for the superintendent seeking the teacher's dismissal were members of the same law firm). Ms. Dorsey offered no evidence to show that the dual role served by the Attorney General's Office resulted in actual bias or unfair prejudice to her or occasioned any delay in the disposition of her claims; therefore, we reject her argument.

Affirmed.

Chief Judge ARNOLD and Judge SMITH concur.