DIALYSIS CARE OF NORTH CAROLINA, LLC, D/B/A DCNC, LLC, D/B/A DIALYSIS CARE OF ROWAN COUNTY, PETITIONER-APPELLANT V. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT-APPELLEE AND BIO-MEDICAL APPLICATIONS OF NORTH CAROLINA, INC. D/B/A BMA OF KANNAPOLIS D/B/A METROLINA KIDNEY CENTER OF KANNAPOLIS (LESSEE) AND METROLINA NEPHROLOGY ASSOCIATES, P.A. (LESSOR), RESPONDENTS-INTERVENORS-APPELLEES

No. COA99-436

(Filed 2 May 2000)

**1. Hospitals and Other Medical Facilities— certificate of need—application—financial feasibility—conditional approval**

The Department of Health and Human Services' final agency decision that approved the application for a certificate

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

of need was not defective based on its finding under N.C.G.S. § 131E-183(a)(5) that Bio-Medical Applications' (BMA) application was conditionally conforming to Criterion 5, concerning the financial feasibility of the project, because the whole record test reveals: (1) the availability of funds for the project was set out in BMA's application; and (2) the Certificate of Need Section issued a conditional approval requiring additional documentation, thus ensuring compliance with Criterion 5.

## 2. Hospitals and Other Medical Facilities— certificate of need—application—no improper amendment

Although the administrative law judge (ALJ) is limited to consideration of evidence which was before the Certificate of Need Section when making its initial decision concerning an application for a certificate of need, a de novo review reveals that the testimony at the contested case hearing, regarding NationsBanks' intent to finance Metrolina Nephrology Associates when the proposed borrower was listed as Kannapolis Nephrology Associates, did not constitute an amendment to Bio-Medical Applications' (BMA) application and was properly considered by the agency because: (1) the NationsBank finance letter was before the Certificate of Need Section when it made its initial decision; and (2) the ALJ is not limited to that part of the evidence that the Certificate of Need Section actually relied upon in making its decision.

## 3. Hospitals and Other Medical Facilities— certificate of need—final agency decision—no new evidence considered

The Department of Health and Human Services did not use new evidence, that was not before the administrative law judge (ALJ), in its final agency decision concerning an application for a certificate of need, including evidence that Bio-Medical Applications (BMA) has a history of operations in North Carolina, is known to the Certificate of Need Section, and the project analyst had previously reviewed BMA's applications, because: (1) BMA's application, which was before the ALJ, lists 32 facilities that BMA has constructed or acquired in North Carolina and an additional 17 facilities in North Carolina for which a certificate of need application was approved; and (2) the project analyst testified before the ALJ that she had performed reviews for BMA applications.

640          IN THE COURT OF APPEALS

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

**4. Hospitals and Other Medical Facilities— certificate of need—application—conditional approval—not arbitrary and capricious**

The Department of Health and Human Services' final agency decision that conditionally approved the application for a certificate of need for a dialysis facility was not arbitrary and capricious where: (1) the conditions imposed explicitly required documentation of the availability of funds and of a commitment to provide those funds from the funding entity, as required by Criterion 5; and (2) the services were determined to be needed.

**5. Hospitals and Other Medical Facilities— certificate of need—application—need for the proposed project**

The Department of Health and Human Services' final agency decision that approved the application for a certificate of need for a dialysis facility was not defective based on its finding under N.C.G.S. § 131E-183(a)(3) that Bio-Medical Applications' (BMA) application conformed to Criteria 3, 4, and 6, concerning the need for the proposed project, because the whole record test reveals: (1) BMA identified 34 of its own patients who expressed a willingness to transfer their treatment from Concord to the proposed BMA facility in Kannapolis; (2) the project analyst determined that BMA's Kannapolis facility would meet or exceed the utilization guideline established by the agency; (3) the project analyst determined that BMA's proposal to relocate ten dialysis stations to a new facility in Kannapolis was the most effective alternative; and (4) the project analyst determined that BMA demonstrated a need to relocate dialysis stations to better serve their patients, and that such a relocation would not provide a duplication of services.

Chief Judge EAGLES dissenting.

Appeal by petitioner from the final agency decision entered 8 December 1998 and filed 9 December 1998 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 10 January 2000.

*Poyner & Spruill, L.L.P., by William R. Shenton, Thomas R. West, and Eric P. Stevens, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Staci Tolliver Meyer, for respondent-appellee.*

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

*Law Office of Joy H. Thomas, by Joy H. Thomas, for respond-
ents-intervenors-appellees.*

WALKER, Judge.

Dialysis Care of North Carolina ("DCNC") appeals from a final
agency decision of the North Carolina Department of Health and
Human Services (formerly the Department of Human Resources, N.C.
Gen. Stat. § 143B-138.1 (1999)) ("Department" or "agency"), awarding
a Certificate of Need ("CON") to Bio-Medical Applications of North
Carolina, Inc. et al, ("BMA"). DCNC moves this Court to take judicial
notice of its corporate name change to Total Renal Care of North
Carolina, LLC. We grant this motion, but for the sake of clarity in this
opinion, we will refer to the corporation as DCNC.

BMA, a subsidiary of Fresenius Medical Care, provides dialysis
treatment for kidney disease patients at their dialysis facilities in
North Carolina, including Concord. DCNC also operates dialysis
facilities in North Carolina, including facilities in Kannapolis and
Salisbury. The DCNC Kannapolis facility was the focus of a dispute
between these same two parties in this Court's recent decision in
*BMA v. N.C. Dept. of Health and Human Services,* 136 N.C. App. 103,
523 S.E.2d 677 (1999). In that case, DCNC applied to transfer ten
dialysis stations located at its Salisbury facility to a new location
in Kannapolis, which BMA contested. This Court upheld the final
agency decision awarding DCNC a CON for the Kannapolis facility.
*Id.*

On 16 July 1997, BMA filed an application with the CON Section
of the agency to establish a new ten-station dialysis facility in
Kannapolis, whereby BMA would relocate ten of its Concord dialysis
stations to the proposed Kannapolis facility so that the overall num-
ber of dialysis stations operated by BMA would not increase. BMA's
application proposed that the new facility would be operated by
BMA, but constructed by and leased from Metrolina Nephrology
Associates, P.A. ("MNA"). The proposed facility would be approxi-
mately 7 miles from BMA's Concord facility and approximately 1.3
miles from DCNC's Kannapolis facility. BMA surveyed its Concord
patients and determined that 34 patients expressed a willingness to
transfer their dialysis treatment from the BMA Concord facility to the
proposed BMA Kannapolis facility.

Initially, the CON Section found BMA's application incomplete
because the lessor, MNA, had not submitted a certification page with

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

the application. In response, George Hart, M.D., Vice-President of MNA, submitted a notarized certification page to the CON Section and listed the applicant as "Kannapolis Nephrology Associates, LLC* (* A limited liability company to be formed by principles of [MNA], upon issuance of CON)." Upon receipt of this certification page, the CON Section deemed BMA's application to be complete.

The project analyst determined that the capital expenditure associated with the project was approximately $1.1 million and that MNA's portion of the costs was proposed to be $900,000. BMA's application contained a financing letter from Beth Blanton, Vice President and Relationship Manager of NationsBank. The financing letter expressed NationsBank's willingness to consider a loan to fund the proposed project up to 80% of the appraised value, which was determined by the project analyst to be $900,000. Accordingly, NationsBank evidenced a commitment of $720,000 (80% of $900,000).

On 7 November 1997, the CON Section issued a Conditional Approval of BMA's application, which required in part that:

5. Within 35 days of the date of this decision and prior to issuance of the certificate of need, Metrolina Nephrology Associates, P.A. shall submit documentation that $180,000 is available and committed by Metrolina Nephrology Associates, P.A. for its portion of the total capital cost of the project.

6. Within 35 days of the date of this decision and prior to issuance of the certificate of need, Bio-Medical Applications of North Carolina, Inc. d/b/a BMA of Kannapolis shall submit documentation from the person who is fiscally responsible for the funds to be used for the lessee's portion of the capital cost and for start-up and initial operating expenses that $539,076 is available and committed to this project.

Further, the Conditional Approval stated that the CON would not be issued "until all applicable conditions of approval that can be satisfied before issuance of the [CON] have been met pursuant to G.S. 131E-187(a)."

On 4 December 1997, DCNC filed a petition challenging the CON Section's decision to issue a Conditional Approval. BMA was permitted to intervene in the contested case on 4 February 1998.

At the contested case hearing before the Administrative Law Judge ("ALJ"), Ms. Blanton testified that the intent of the

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

NationsBank letter was "to finance for Metrolina or another entity that they would form to construct and for the permanent financing for the Kannapolis center." Further, she testified that:

Our primary relationship is with Metrolina Nephrology, and with talking to Suzanne Mecum, who is with Metrolina and works with the other centers that they have, it was our intent to service Metrolina. And whether that be funding to Metrolina directly or to another entity that they set up specifically with the Kannapolis location, it was our intent to service either one and to finance that.

Ms. Blanton further testified that Metrolina had access to sufficient funds for the equity contribution of $180,000.

On 31 August 1998, the ALJ found that although the project was needed, BMA's application was incomplete and non-conforming with N.C. Gen. Stat. § 131E-183(a)(5) (1999) ("Criterion 5"), which pertains to the availability of funds for capital and operating needs of the facility.

On 8 December 1998, the Department's final decision concurred with the ALJ that the project was needed, but found BMA's application in compliance with N.C. Gen. Stat. § 131E-183. After making extensive findings, the Department concluded in part that:

3. The Agency appropriately determined that BMA was conforming with the applicable criteria regarding need. The Agency did not fail to consider DCNC's existing facility in Kannapolis, Rowan County in making its determination that the BMA facility was conforming with the need criteria.

4. The conditions imposed on the approval of the BMA application were lawful and appropriate pursuant to the statutory and regulatory authority granted to the Agency. N.C. Gen. Stat. § 131E-186(a) provides in part "[t]he department shall issue a decision to approve, approve with conditions or deny an application. . . ." 10 N.C.A.C. 3R.0313(a) provides in part "If a proposal is not consistent with all applicable standards, plans and criteria, the Agency decision shall be to either not issue the certificate of need or issue one subject to those conditions necessary to ensure that the proposal is consistent with applicable standards, plans and criteria." These conditions were properly imposed and sufficient to ensure conformity of the BMA application with the applicable criteria. The imposition of conditions

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

in this case did not prejudice any competing applicants, as there were none in this review.

. . .

6. The CON Section can conditionally approve an application with respect to Review Criterion 5 subject to the applicant supplying certain additional information.

7. The Agency acted reasonably in imposing conditions to require further confirmation to ensure availability and commitment for capital and operating needs and for the financial feasibility of the project.

8. The CON Section is authorized pursuant to N.C.G.S. § 131E-186(a) to approve a CON application; in this non-competitive review, it was not arbitrary or capacious [sic] for the Agency to use conditions to obtain statutorily required information.

9. Based upon the findings set forth above, the Agency did not exceed its authority or jurisdiction, did not act erroneously, did not fail to use proper procedure, did not act arbitrarily or capriciously, and did not fail to act as required by law or rule in violation of N.C. Gen. Stat. § 150B-23(a) in approving the application of BMA for the relocation of 10 stations to a new Kannapolis, Cabarrus County facility.

The Department determined "that a Certificate of Need shall be awarded to" BMA.

The North Carolina Administrative Procedure Act, N.C. Gen. Stat. § 150B-1 *et seq.*, governs both trial and appellate court review of administrative agency decisions. *See Eury v. N.C. Employment Security Comm.*, 115 N.C. App. 590, 596, 446 S.E.2d 383, 387 (1994). Pursuant to G.S. § 150B-51(a), when reviewing a final decision in a contested case in which an ALJ made a recommended decision, this Court must make two initial determinations:

First, the court shall determine whether the agency heard new evidence after receiving the recommended decision. If the court determines that the agency heard new evidence, the court shall reverse the decision or remand the case to the agency to enter a decision in accordance with the evidence in the official record. Second, if the agency did not adopt the recommended decision, the court shall determine whether the agency's decision states the specific reasons why the agency did not adopt the recom-

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

mended decision. If the court determines that the agency did not state specific reasons why it did not adopt a recommended decision, the court shall reverse the decision or remand the case to the agency to enter specific reasons.

N.C. Gen. Stat. § 150B-51(a) (1999). Although DCNC argues that the agency heard new evidence after receiving the ALJ's recommended decision, we conclude, as discussed *infra*, that the agency did not hear new evidence and that the Department's decision sufficiently states the reasons why the Department did not adopt the recommended decision. Accordingly, we proceed with our review of the Department's final decision.

Under G.S. § 150B-51(b):

[T]he court reviewing a final agency decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b) (1999). Although this statute "lists the grounds upon which the [reviewing] court may reverse or modify a final agency decision, the proper manner of review depends upon the particular issues presented on appeal." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994); *see also Utilities Comm. v. Oil Co.*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981) (stating that the "nature of the contended error dictates the applicable scope of review"). More than one standard of review may be utilized if required by the nature of the issues. *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118.

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

The appropriate standard of review is *de novo* for an assertion that the agency decision is based on an error of law under subsections (1),(2),(3) or (4). *See Hubbard v. State Construction Office*, 130 N.C. App. 254, 257, 502 S.E.2d 652, 656 (1998); *In re Appeal of Ramseur*, 120 N.C. App. 521, 524, 463 S.E.2d 254, 256 (1995); *Burke Health Investors, L.L.C. v. N.C. Dept. of Human Resources*, 135 N.C. App. 568, 522 S.E.2d 96 (1999).

When it is alleged that a final agency decision was not supported by the evidence or was arbitrary or capricious, this Court must apply the "whole record" test. *See Retirement Villages Inc. v. N.C. Dept. of Human Resources*, 124 N.C. App. 495, 498, 477 S.E.2d 697, 699 (1996); *Burke Health Investors*, 135 N.C. App. at 571, 522 S.E.2d at 99. In applying the whole record test, the reviewing court is required "to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Meads v. N.C. Dep't. of Agric.*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (*quoting Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Meads*, 349 N.C. at 663, 509 S.E.2d at 170 (*quoting Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)); *Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 393 (1997). We should not replace the agency's judgment as between two reasonably conflicting views, even if we might have reached a different result if the matter were before us *de novo*. *See Meads*, 349 N.C. at 663, 509 S.E.2d at 170. While the record may contain evidence contrary to the findings of the agency, this Court may not substitute its judgment for that of the agency. *See Employment Security Comm. v. Peace*, 128 N.C. App. 1, 7, 493 S.E.2d 466, 470 (1997), *affirmed in part and review dismissed in part*, 349 N.C. 315, 507 S.E.2d 272 (1998).

**[1]** First, DCNC argues the Department's decision finding that BMA's application was conditionally conforming to Criterion 5 was unsupported by substantial evidence. Accordingly, we employ the whole record test and review all competent evidence to determine if the agency's decision is supported by substantial evidence.

Criterion 5 states that "[f]inancial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

proposing the service." N.C. Gen. Stat. § 131E-183(a) (5) (1999). Where the project is to be funded by an entity other than the applicant, the agency must have "evidence" of a commitment to provide the funds by the funding entity. *See Retirement Villages*, 124 N.C. App. at 499, 477 S.E.2d at 699.

The availability of funds for the project was set out in BMA's application. BMA submitted a letter from the Vice President of Finance for Fresenius Medical Care obligating sufficient funding. The CON Section conditioned its approval upon submission of documentation from the person fiscally responsible for the $539,076 associated with BMA's portion of the project. MNA's certification page agreed to carry out the project which required a combination of a loan and lessor's equity totaling $900,000. The NationsBank financing letter evidenced a commitment of $720,000 to the proposed project. Ms. Blanton testified that the intent of the letter was to service and finance the project for MNA "directly or [for] another entity that [MNA] set up specifically with the Kannapolis location." The certification page provided by George Hart described Kannapolis Nephrology Associates, LLC as "a limited liability company to be formed by the principles of [MNA]." Ms. Blanton also testified that MNA had access to sufficient funds for their equity contribution of $180,000. The CON Section issued a conditional approval requiring additional documentation to satisfy Criterion 5. As discussed *infra*, these conditions ensure compliance with Criterion 5.

Our review of the whole record reveals there was substantial evidence from which the agency could reasonably find that BMA's application conformed with Criterion 5, as conditioned, and thus DCNC's first assignment of error is without merit.

[2] Next, DCNC argues that evidence was submitted at the contested case hearing which constitutes an improper amendment to BMA's application and should not have been considered by the ALJ. Specifically, Ms. Blanton's testimony at the contested case hearing regarding NationsBank's intent to finance MNA when the proposed borrower was listed as Kannapolis Nephrology Associates constituted an amendment to BMA's application. Further, Ms. Blanton's testimony regarding MNA's access to sufficient funding for its equity contribution of $180,000 was also an improper amendment to BMA's application. DCNC's assertions require a *de novo* review.

An applicant may not amend a CON application. *See* 10 N.C.A.C. 3R.0306 (Dec. 1999 Supp.). The hearing officer (ALJ) is properly lim-

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

ited to consideration of evidence which was before the CON Section when making its initial decision. *See In re Application of Wake Kidney Clinic*, 85 N.C. App. 639, 643, 355 S.E.2d 788, 791 (1987). However, the ALJ is not limited to that part of the evidence before it that the CON Section actually relied upon in making its decision. *Id.* Information available to the agency at the time of the original decision may be relied upon in its final decision. *Id.*

The NationsBank finance letter was before the CON Section when it made its initial decision. The letter referred to the "more than satisfactory banking relationship[]" NationsBank has with MNA and Ms. Blanton, the letter's author, testified regarding NationsBank's intent to finance MNA and its access to sufficient equity funding. This information was available to the CON Section at the time of the initial decision. Accordingly, Ms. Blanton's testimony did not constitute an amendment to BMA's application and was properly considered by the agency.

**[3]** Next, DCNC claims the agency used new evidence in its final decision that was not before the ALJ. Specifically, the agency's findings that BMA has a history of operations in North Carolina, is "known to the CON Section," and that the project analyst had previously reviewed BMA applications, are the result of considering evidence not before the ALJ.

BMA's application lists 32 facilities that BMA has constructed or acquired in North Carolina and an additional 17 facilities in North Carolina for which a CON application was approved, but which were not yet in operation. With regard to the project analyst's experience with BMA, she testified before the ALJ that she had performed reviews for "BMA of King's Mountain, [North Carolina]" and "some BMA applications in Mecklenburg County, [North Carolina], for new facilities, or at least for relocation of stations." Thus, DCNC is unable to establish that the agency considered evidence not before the ALJ.

**[4]** Also, DCNC argues that the agency's attempt to condition BMA's application was beyond its statutory authority, because the agency lacked sufficient information before it to determine if the application was consistent with or in conflict with Criterion 5. Specifically, DCNC argues that "the Agency issued a CON at a time when it could not know whether the applicants would be able to satisfy indispensable statutory requirements." DCNC asserts that the agency acted erroneously, failed to follow proper procedure, exceeded its authority, and acted arbitrarily and capriciously.

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

Under N.C. Gen. Stat. § 131E-182, an applicant for a CON "shall be required to furnish only that information necessary to determine whether the proposed new institutional health service is consistent with the review criteria implemented under G.S. 131E-183 and with duly adopted standards, plans and criteria." Under N.C. Gen. Stat. § 131E-183(a), the Department "shall determine that an application is either consistent with or not in conflict with these criteria *before a certificate of need . . . shall be issued*." (Emphasis added). N.C. Gen. Stat. § 131E-186 states in part, "the Department shall issue a decision to 'approve,' 'approve with conditions,' or 'deny,' an application for a new institutional health service." N.C. Gen. Stat. § 131E-186(a) (1999). Furthermore, N.C. Gen. Stat. § 131E-187 states in part:

The Department shall issue a certificate of need within five days after [ . . . ] the final agency decision has been made following a contested case hearing, *and all applicable conditions of approval that can be satisfied before issuance of the certificate of need have been met.*

N.C. Gen. Stat. § 131E-187(b) (1999) (emphasis added).

Thus, the Department's rules mandate that the Department either issue a CON *subject* to conditions that ensure the proposal becomes consistent with all criteria or deny a CON to a non-conforming applicant. Specifically, Title 10 N.C.A.C. 3R.0313 states in part:

If a proposal is not consistent with all applicable standards, plans, and criteria, the agency decision shall be to either not issue the certificate of need *or issue one subject to those conditions* necessary to insure that the proposal is consistent with applicable standards, plans, and criteria. The agency *may only impose conditions which relate directly to applicable standards, plans, and criteria.*

10 N.C.A.C. 3R.0313 (Dec. 1999 Supp.) (emphasis added).

Additionally, this Court has approved the practice of conditioning CON applications. *See In re Humana Hosp. Corp. v. N.C. Dept. of Human Resources*, 81 N.C. App. 628, 632, 345 S.E.2d 235, 237 (1986) (stating "the law does not require that applications for certificates of need be approved precisely as submitted or not at all, and it would be folly if it did so"); *Burke Health Investors*, 135 N.C. App. at 576, 522 S.E.2d at 101. Further, this Court has held that it was not error for a hearing officer (ALJ) to condition her approval of a CON application upon information to be furnished later, rather than returning the case

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

to the project analyst for further review, because "N.C. Gen. Stat. § 131E-185 authorizes the Department to issue a CON with or without conditions." *In re Conditional Approval of Certificate of Need,* 88 N.C. App. 563, 566, 364 S.E.2d 150, 152, *disc. review denied,* 322 N.C. 480, 370 S.E.2d 220 (1988).

Here, the CON Section conditioned its approval upon BMA submitting documentation that $180,000 is available and committed by MNA for its equity portion of the total capital cost of the project and documentation "from the person who is fiscally responsible for the funds to be used for the lessee's portion of the capital cost and for start-up and initial operating expenses that $539,076 is available and committed to this project." These two conditions "insure that the proposal is consistent with applicable . . . criteria." 10 N.C.A.C. 3R.0313. The conditions imposed explicitly require documentation of the availability of funds and of a commitment to provide those funds from the funding entity, as required by Criterion 5.

DCNC calls our attention to the agency's decisions to deny two BMA applications for dialysis stations in Johnston County and Robeson County. DCNC argues that the agency found these BMA applications non-conforming with respect to Criterion 5 under similar circumstances to the present case. However, in the Robeson and Johnston decisions, both of which were competitive reviews between these same parties, the agency found BMA's and DCNC's applications non-conforming because of numerous deficiencies. No doubt of particular importance was the agency's determination there was a lack of need for the services proposed by the parties in both Robeson County and Johnston County.

Here, the initial determination by the CON Section, the ALJ's recommended decision, and the final decision all concluded that this project was needed. Additionally, there was substantial evidence from which the agency could reasonably find BMA's application conditionally conforming with Criterion 5. Under these circumstances, the agency's decision to conditionally approve a CON application where the services are determined to be needed does not rise to the level of arbitrary and capricious decision-making.

[5] Finally, DCNC argues that the final decision's findings that BMA's application conformed with N.C. Gen. Stat. § 131E-183(a)(3), (4) and (6) ("Criteria 3, 4, and 6") were not supported by substantial evidence. As previously stated, this Court must apply the whole record test to determine whether the final decision is supported

by substantial evidence. Criteria 3, 4 and 6 relate to the need for the proposed project.

In its application, BMA identified 34 of its own patients who expressed a willingness to transfer their treatment from Concord to the proposed BMA facility in Kannapolis. After consulting with these BMA patients, BMA's Nursing Director confirmed their interest in transferring their dialysis treatment. The project analyst determined that BMA's Kannapolis facility would meet or exceed the utilization guidelines established by the agency. The project analyst also determined that relocation of ten dialysis stations to Kannapolis would create better access for BMA's current patients.

BMA's application presented the alternatives that were considered: (1) relocating stations to develop a new facility at a new site, (2) expansion of the existing facility, and (3) doing nothing. BMA indicated that its most viable and cost effective alternative was a proposal to relocate ten dialysis stations to a new facility in Kannapolis. The project analyst testified that she evaluated the alternatives proposed by BMA "and determined that they had selected the most effective alternative."

With regard to unnecessary duplication of services, the project analyst determined that BMA demonstrated a need to relocate dialysis stations to better serve their patients and that such a relocation would not provide such a duplication of services. Additionally, the project analyst testified that she took into consideration that DCNC operates a dialysis center in Kannapolis, but did not "consider it a factor," because BMA's identification of 34 of its own patients to be served at the proposed Kannapolis facility was "a good indication of [BMA] being able to serve that number of patients one and a half to two and a half years down the line and meet their utilization projections."

In sum, there was substantial evidence from which the Department could reasonably find that BMA's application conformed with Criteria 3, 4, and 6. Accordingly, DCNC's final assignment of error is also without merit.

Affirmed.

Judge WYNN concurs.

Chief Judge EAGLES dissents.

DIALYSIS CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[137 N.C. App. 638 (2000)]

Chief Judge EAGLES dissenting.

I respectfully dissent.

G.S. § 131E-183 mandates compliance in all substantive aspects with its review criteria, including Criterion 5. *See Retirement Villages v. N.C. Dept. of Human Resources*, 124 N.C. App. 495, 477 S.E.2d 697 (1996); *Presbyterian-Orthopedic Hospital v. N.C. Dept. of Human Resources*, 122 N.C. App. 529, 470 S.E.2d 831 (1996); *Britthaven v. Dept of Human Resources*, 118 N.C. App. 379, 455 S.E.2d 455, *disc. rev. denied*, 341 N.C. 418, 461 S.E.2d 754 (1995).

In light of this mandate, it is clear that G.S. §§ 131E-185 and 186, when read in conjunction with G.S. § 131E-183, grant DHHS limited power to conditionally approve deficient CON applications only where the additional information sought by the Agency by means of conditions is not essential to an applicant's compliance with the mandatory review criterion in the first place. *See* G.S. § 131E-182 (applicants "shall be required to furnish . . . that information necessary to determine whether the proposed new institutional health service is consistent with the review criteria implemented under G.S. [§] 131E-183"). Consequently, I would hold that 10 N.C.A.C. 3R.0313, relied upon by DHHS and BMA here, exceeds the Agency's statutory authority to the extent that it purports to grant the Agency the power to conditionally approve CON applications pending receipt of information which is "necessary" for compliance with G.S. § 131E-183.

Despite this Court's specific approval of the Agency's authority to issue conditional approvals, *see Humana, Burke,* and *In re Conditional Approval,* we have never held that the Agency has unbridled authority to sidestep G.S. § 131E-183's clear mandate that applicants provide all necessary information in their initial filings. Prior cases upholding conditional approvals have noted that the information omitted by applicants (and sought by means of the imposition of conditions by the CON Section) was not "essential" to a finding of conformity with G.S. § 131E-183. *See Burke,* 135 N.C. App. at 576, 522 S.E.2d at 102 (finding that the conditions placed on nonconforming applications "were not essential to its approval" because additional Criterion 5 documentation sought by the Agency "was not crucial to a finding of financial feasibility"); *In re Conditional Approval of Certificate of Need,* 88 N.C. App. at 566, 364 S.E.2d at 152, citing *Humana* (approval conditioned on the later provision of information which "did not change the proposal in any material or practical sense and was not unauthorized"). Requiring conformity

with G.S. § 131E-183 would not, however, confine the Agency to approving CON applications "precisely as submitted or not at all," see *Burke*, 135 N.C. App. at 576, 522 S.E.2d at 102, citing *Humana*, 81 N.C. App. at 632, 345 S.E.2d at 237, because not all deficiencies would relate to essential prerequisites. For instance, the Agency would be well within its power to condition approval on the provision of additional details clarifying information already contained in *conforming applications*.

＇ In the "Required State Agency Findings" attached to the CON Section's letter conditionally approving BMA's application, CON Section project analyst Mary Edwards found that (1) BMA "did not provide any documentation that [MNA] has $180,000 available and committed [for the owner's equity portion of the capital costs for] . . . this project," and (2) "it is not clear if Fresenius Medical Care . . . is funding [the lessee's $539,076 portion of the capital cost and for start-up and initial operating expenses of] the project." Based on these findings of nonconformity with Criterion 5, I would reverse on grounds that (1) the omitted financial information was essential and "necessary" for the CON section to determine BMA's initial conformity with Criterion 5, (2) the omission could not be cured by the imposition of conditions pursuant to G.S. §§ 131E-185 and 186 or relevant agency rules, and (3) the omission should have precluded the issuance of a CON to the nonconforming applicant under G.S. § 131E-183.