GOOD HOPE HEALTH SYSTEM, LLC, Petitioner, and TOWN OF LILLINGTON, Petitioner-Intervenor, N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, and HARNETT HEALTH SYSTEM, INC. HARNETT COUNTY AND WAKEMED, Respondent-Intervenor

HARNETT HEALTH SYSTEM, INC., HARNETT COUNTY AND WAKEMED, Petitioner v. N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, Respondent, and GOOD HOPE HEALTH SYSTEM, LLC, Respondent-Intervenor

No. COA07-551

(Filed 15 January 2008)

**1. Hospitals— certificate of need—earlier certificate—hospital not built**

The Certificate of Need section of the Department of Health and Human Services did not err by approving Harnett Health's application for a certificate for a new hospital where petitioner alleged that the Agency did not consider its earlier certificate of need. Petitioner's position assumes that the Agency had no authority to conclude, based on the available evidence, that petitioner was not going to build the hospital permitted by its prior certificate of need.

**2. Hospitals— certificate of need—CT scanner—rule not valid as applied**

The Certificate of Need section of the Department of Health and Human Services did not err by adopting the action of the administrative law judge voiding an administrative rule as applied to a CT scanner. N.C.G.S. § 150B-33(b) allows the agency to determine that a rule as applied in a particular case is void when the rule is not reasonably necessary in a particular case to enable the agency to fulfill its duty.

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

Appeal by Petitioner from decision entered 2 February 2007 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 14 November 2007.

*Law Office of Joy H. Thomas, by Joy H. Thomas; and Morgan Reeves & Gilchrist, by C. Winston Gilchrist, for Petitioner-Appellant Good Hope Health System, LLC.*

*Morgan Reeves & Gilchrist, by C. Winston Gilchrist, for Petitioner-Intervenor-Appellant Town of Lillington.*

*Attorney General Roy Cooper, by Assistant Attorney General June S. Ferrell, for Respondent-Appellee North Carolina Department of Health and Human Services, Division of Facility Services, Certificate of Need Section.*

*Poyner & Spruill, by William R. Shenton, Kenneth L. Burgess, and Thomas R. West, for Respondent-Intevenor Appellees Harnett Health System, Inc., Harnett County and WakeMed.*

ARROWOOD, Judge.

Petitioner-Appellant, Good Hope Health System, LLC (GHHS), appeals from a final agency decision of the North Carolina Department of Health and Human Services, Division of Facility Services, Certificate of Need Section (the Agency), entered 2 February 2007. The Agency decision denied Petitioner's application for a Certificate of Need (CON) to build a new hospital in Harnett County, North Carolina, and granted the CON application of Respondent-Appellees Harnett Health System, Inc., Harnett County, and WakeMed (collectively, Harnett Health). We affirm.

The procedural history of this case is summarized in relevant part as follows: Good Hope Hospital (Good Hope) previously operated an acute care hospital in Erwin, North Carolina. In 2001:

Good Hope applied for a Certificate of Need (CON) . . . to partially replace its existing facility. . . . On 14 December 2001, the Agency issued a CON to Good Hope for a forty-six bed hospital with three operating rooms. . . . Good Hope later entered into a joint venture with Triad Hospitals, Inc. . . . The two formed Good Hope Hospital System, L.L.C. (GHHS). GHHS filed a motion for declaratory ruling requesting: (1) it be assigned Good Hope's 2001 CON[.] . . . The Agency denied the request for declaratory ruling.

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

GHHS appealed the denial . . . but obtained a stay of that appeal. Good Hope has not relinquished its 2001 CON.

*Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 296, 298, 623 S.E.2d 307, 309, *rev'd on other grounds*, 360 N.C. 635, 637 S.E.2d 517 (2006) (*Good Hope I*).

The procedural history of *Good Hope I* is summarized as follows:

In April 2003 GHHS filed a new application (2003 application) for a CON to build a complete replacement hospital in Lillington, rather than Erwin. . . . Prior to filing the 2003 application, . . . [the Agency] advised GHHS to file a new CON application, not just an amended 2001 application because of the difference in location, size, and scope of the proposed new hospital. After review, the Agency denied GHHS's 2003 application. GHHS appealed to [the Office of Administrative Hearings] OAH, challenging the Agency's decision. Betsy Johnson and Central Carolina Hospital (CCH) moved to intervene as respondents in support of the Agency's decision. The administrative law judge (ALJ) granted the motion to intervene. On 9 July 2004, the ALJ recommended the Agency's decision be reversed. Respondents appealed to the Department for final agency review. On 10 September 2004, the Department denied GHHS's application in a final agency decision. GHHS appealed.

*Good Hope I*, 175 N.C. App. at 298, 623 S.E.2d at 309.

In August 2005, while its appeal was pending before this Court, GHHS filed a new CON application "in response to a need determination issued by the Governor in the 2005 State Medical Facilities Plan (SMFP). . . . In its 2005 application, GHHS resubmitted its 2003 CON application in its entirety, with some supplemental information." *Id.* On 3 January 2006 this Court dismissed GHHS's appeal, on the grounds that it was rendered moot by GHHS's 2005 CON application. In an opinion filed 17 November 2006, the North Carolina Supreme Court reversed this Court, holding that GHHS's appeal was not moot and remanding the case to this Court "for consideration on the merits." *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 635, 637, 637 S.E.2d 517, 518 (2006).

In a separate appeal, GHHS appealed the Agency's decision denying GHHS's request for an exemption from CON review. This Court affirmed the Agency in *Good Hope Hosp., Inc. v. N.C. HHS*, 175 N.C. App. 309, 623 S.E.2d 315, *aff'd*, 360 N.C. 641, 636 S.E.2d 564 (2006).

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

Harnett Health and GHHS submitted CON applications in August 2005, wherein each proposed to construct a new hospital in central Harnett County. In January 2006 the CON section of the Agency conditionally approved Harnett Health's application and denied GHHS's application. Petitioner-appellant appealed from this Decision, and Harnett Health appealed the condition imposed upon it by the Agency. The Town of Lillington was allowed to intervene in support of GHHS. In October 2006 a contested case hearing was conducted before an Administrative Law Judge, who issued a recommended decision on 20 November 2006. On 2· February 2007 the Agency adopted the ALJ's recommended decision, denying GHHS's application for a CON and granting Harnett Health's application "without the condition which preclude the acquisition of a CT scanner[.]" From this decision GHHS has timely appealed.

## Standard of Review

Review of a final agency decision is governed by N.C. Gen. Stat. § 150B-51(b) (2005), which provides in relevant part that upon appeal:

> the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision[.]

"The substantive nature of each assignment of error controls our review of an appeal from an administrative agency's final decision. Where a party asserts an error of law occurred, we apply a *de novo* standard of review. If the issue on appeal concerns an allegation that the agency's decision is arbitrary or capricious or 'fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision' we apply the whole-record test." *Craven Reg'l Med. Auth. v. N.C. Dep't of Health Servs.*, 176 N.C. App. 46, 51, 625 S.E.2d 837, 840 (2006) (quoting *North Carolina Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004)) (internal quotation marks omitted).

Additionally, "deference must be given to the agency's decision where it chooses between two reasonable alternatives. It would be improper for this Court to substitute our judgment for the Agency's decision where there is substantial evidence in the record to support its findings." *Craven Regional*, 176 N.C. App. at 59, 625 S.E.2d at 845 (citing *Dialysis Care of N.C., LLC v. N.C. Dep't of Health & Human*

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

*Servs.*, 137 N.C. App. 638, 646, 529 S.E.2d 257, 261, *aff'd*, 353 N.C. 258, 538 S.E.2d 566 (2000)).

---

**[1]** Petitioner argues first that the Agency erred by approving Harnett Health's application, on the grounds that the Agency failed to consider the 2001 CON held by Good Hope Hospital. We disagree.

Petitioner correctly reviews the general law governing the Agency's review of CON applications. Pursuant to N.C. Gen. Stat. § 131E-183(a) (2005), the Agency "shall review all applications utilizing the criteria outlined in this subsection and shall determine that an application is either consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued." Petitioner directs our attention primarily to N.C. Gen. Stat. §§ 131E-183(a)(3) and (a)(6) (2005), which require that:

(3) The applicant shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed[.]

(6) The applicant shall demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities.

Petitioner's summary of the procedural rules under which the Agency makes its decisions is generally accurate, and Petitioner correctly notes that a project is "approved" when a CON has been issued, and retains its "approved" status until either the project is complete or the CON is withdrawn. Petitioner points out that, at the time of the hearing, Good Hope had a CON that was still legally valid.

However, Petitioner contends that the requirement that the Agency "consider" the 2001 CON imposed on the Agency a mandatory finding that the 2001 CON was the functional equivalent of a finished project. Petitioner essentially asserts that the Agency was required to find that Good Hope would successfully develop the project approved in the 2001 CON, and to factor a hypothetical completed hospital into its determinations regarding the population to be served and the possibility of duplicative services.

GHHS assigned error to numerous of the Agency's findings of fact, but does not argue on appeal that any specific finding is unsupported by record evidence. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6). "In the present case, defendant assigned error to numerous findings of fact by the [Agency], but has failed to argue any of these assignments of error in her brief on appeal. Such assignments of error are therefore abandoned, and the [Agency's] findings are binding on appeal." *Willen v. Hewson,* 174 N.C. App. 714, 718, 622 S.E.2d 187, 190 (2005), *disc. review denied,* 360 N.C. 491, 631 S.E.2d 520 (2006). The Recommended Decisions' Findings of Fact, which were adopted by the Agency, easily support its conclusion that there was no realistic possibility that Good Hope would develop the hospital approved in the 2001 CON. These findings include the following:

9. The preponderance of the evidence clearly showed that at the time of the Review, Good Hope was in poor Condition with numerous serious safety code deficiencies that had been acknowledged by Good Hope, and with no realistic prospect for renovating the existing hospital.

10. In 2001, Good Hope applied for a certificate of need to develop a hospital that would be a partial replacement of its existing facility. On December 14, 2001, the Agency issued a [CON] to Good Hope which authorized the development of a 48-bed hospital[.]

11. CON holders provide progress reports to the Agency regarding the progress they are making on the implementation of the project for which they have received a CON.

12. In progress reports that it has filed since shortly after Good Hope received the 2001 CON, Good Hope reported that it had not secured financing to develop the 2001 CON, as that project was originally approved by the Agency.

13. Beginning with the progress report it filed in November of 2002, Good Hope [stated] . . . that its proposed partner, Triad Hospital, Inc. ('Triad'), would provide capital for the project but only if the Agency issued a declaratory ruling approving changes in the proposed project for which Good Hope received the 2001 CON.

14. In the progress report it filed in November of 2004, and continuing through the progress report filed most recently before the Review, Good Hope Hospital ceased referring to Triad as a majority partner and funding source for its 2001 certificate of need, and expressly stated that it had not identified a

74        IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

source willing to finance its project as it was originally approved by the Agency.

15. In the progress reports which it has filed since November of 2002, Good Hope has represented that it has not expended any additional funds to develop the 2001 CON.

16. In the progress report that it filed most recently before the 2005 Harnett Hospital Review, Good Hope indicated that the projected dates for all milestones were "unknown."

. . . .

40. Prior to and during the Review, there was substantial information available to the Agency to indicate that Good Hope Hospital would soon close its doors. This information included the following:

> Good Hope's representation to the Department, acknowledged in the Easley Memoranda, that Good Hope would close in 2006.

> . . . .

> The exemption request filed by Good Hope with DFS, asking that it be permitted to build a replacement hospital without obtaining a [CON] since closure of its existing facility was imminent due to the deteriorated condition of its facility.

. . . .

44. No evidence was presented to demonstrate that GHHS will be able to finance and implement the 2001 CON.

45. The information presented to the Agency before it conducted the 2005 Harnett Hospital Review indicated that Good Hope was not making any progress in implementing its 2001 CON[.]

46. The information described above strongly indicated that Good Hope Hospital would close in 2006 and that a replacement hospital would not be constructed by 2011, the third projected operating year of the hospital proposed in the Harnett Health Application.

47. At the time of the Review, the Agency assumed that Good Hope would close by November 2006, based on Good Hope's

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

representations to the Department of Health and Human Services ('the Department').

These and other Agency findings establish that the agency was aware of the 2001 CON but concluded, upon review of the evidence before it, that notwithstanding the fact that Good Hope technically still held a CON, the reality was that Good Hope was not going to build the hospital proposed in the 2001 CON.

Petitioner's position would strip the Agency of authority to reach such a conclusion or to consider, not only the 2001 CON, but also subsequent events pertinent to the likelihood of Good Hope's successful completion of the 2001 project. Petitioner's position assumes that the Agency had no authority to conclude, based on review of the available evidence, that Good Hope was not going to build a replacement hospital. This contention is not supported either by the facts of this case, or by any cited statutory or common law. Petitioner cites no authority for this position and we find none. This assignment of error is overruled.

---

[2] In a related argument, Petitioner asserts that the Agency erred by adopting the "unauthorized action" of the Administrative Law Judge (ALJ) that declared N.C. Admin. Code tit. 10A, r. 14C 2303 (June 2004) "void as applied" to the facts of this case. We disagree.

The Administrative Rule at issue in this case is N.C. Admin. Code tit. 10A, r. 14C 2303(3), which provides in pertinent part:

An applicant proposing to acquire a CT Scanner shall demonstrate each of the following:

1. each fixed or mobile CT Scanner to be acquired shall be projected to perform 5,100 HECT units annually in the third year of operation of the proposed equipment;

2. each existing fixed CT scanner in the applicant's CT service area shall have performed at least 5,100 HECT units in the 12 month period prior to submittal of the application;

3. each existing and approved fixed CT scanner in the applicant's CT service area shall be projected to perform 5,100 HECT units annually in the third year of operation of the proposed equipment;

4. each existing mobile CT scanner in the proposed CT service area performed at least an average of 20 HECT units per day

per site in the CT scanner service area in the 12 months prior to submittal of the application; and

5. each existing and approved mobile CT scanner shall perform at least an average of 20 HECT units per day per site in the CT scanner service area in the third year of operation of the proposed equipment.

The Agency's findings of fact pertinent to the need for a CT scanner, include the following:

8. Before the time of the 2005 Harnett Hospital Review, Good Hope Hospital ("Good Hope") had been attempting to replace its aging physical plant for several years.

9. The preponderance of the evidence clearly showed that at the time of the Review, Good Hope was in poor condition with numerous serious safety code deficiencies that had been acknowledged by Good Hope and with no realistic prospect for renovating the existing hospital.

. . . .

23. In 2003, GHHS applied for a certificate of need to build a complete replacement hospital in Lillington.

24. In its 2003 Application, GHHS identified many serious problems with Good Hope's physical plant and represented that "Good Hope Hospital has a compelling need for a new hospital facility."

25. The 2003 GHHS Application presented detailed information regarding the dilapidated condition of Good Hope's facilities[.]

. . . .

32. The Agency has adopted special Criteria and Standards for Computed Tomography, which are codified at 10A NCAC 14C.2301 *et. seq.*

33. The Agency's rules for CT services include provisions that: (1) 'each existing CT scanner in the applicant's CT service area shall have performed at least 5,100 HECT units in the 12 month period prior to submittal of the application;' and (2) 'each existing and approved CT scanner in the applicant's CT

IN THE COURT OF APPEALS          77

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

service area shall be projected to perform at least 5,100 HECT units in the third year of operation of the proposed equipment.' 10A NCAC 14C.2303(2) and (3) (collectively the 'CT Rule').

34. In approving the Harnett Health Application, the Agency attached a condition which provided that Harnett Health could not acquire a Computed Tomography ('CT') Scanner as part of this project. The reasons for this condition, based on the Agency Findings, were the provisions in the CON Section's administrative rules pertaining to CT services. Those provisions address the past and future utilization level of existing CT scanners within the service area where a new CT scanner is proposed.

35. At the time of the Review, there were three existing CT scanners in Harnett Health's defined service area.

36. Good Hope's CT scanner did not perform 5,100 HECT units during the 12-month period prior to submittal of the Harnett Health Application.

37. The Good Hope CT scanner was the only CT scanner in Harnett Health's defined service area that was operating below the required utilization level. . . .

. . . .

39. When the Agency reviewed the GHHS and Harnett Health Applications, the Agency was aware that GHHS's attempt to obtain the Agency's approval to establish a new hospital in Lillington had failed. The Agency knew that GHHS's requests for a Declaratory Ruling and exemption from [CON] review had been denied[.]

40. Prior to and during the Review, there was substantial information available to the Agency to indicate that Good Hope Hospital would soon close its doors. . . .

. . . .

46. . . . [Information] strongly indicated that Good Hope Hospital would close in 2006 and that a replacement hospital would not be constructed by 2011, the third projected operating year of the hospital proposed in the Harnett Health Application.

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

47. At the time of the Review, the Agency assumed that Good Hope would close by November 2006, based on Good Hope's representations to the Department of Health and Human Services (the 'Department').

48. Harnett Health's expert testified that in developing the Harnett Health Application's projection of CT utilization, he did not rely upon or focus on data reflecting the utilization of Good Hope's CT scanner, which was being utilized at only about 20-21% of its capacity, because Good Hope was not reflective of a stable, ongoing operati[on] since it was struggling and he did not want to base his projections on a struggling hospital. . . .

49. The Agency assumed that Good Hope's CT scanner would not be performing 5,100 HECT units per year in the future, since Good Hope would be closing.

50. Because the Good Hope CT scanner had performed less than 5,100 HECT units during the 12-month period prior to submittal of the Harnett Health Application, the Agency apparently felt obligated to approve the Harnett Health Application subject to a condition that Harnett Health "shall not acquire a computed tomography scanner as part of this project.". . . "[T]he condition precluding Harnett Health from acquiring a CT scanner as part of their proposed project was based exclusively on the utilization of the CT scanner at Good Hope Hospital."

51. There is no evidence to support the assertion that Good Hope or GHHS will have a CT scanner operational by 2011, Harnett Health's proposed third year of operation.

. . . .

93. Harnett Health's expert was aware that Good Hope held a 2001 CON for a partial replacement hospital in Erwin. However, he did not discuss this in the Harnett Health Application because Good Hope had made no progress towards developing that facility. Its progress reports showed no progress on that project. . . . Harnett Health's expert testified that he usually considers existing and approved CONs in evaluating need and utilization in a CON application, if an approved project is one that is going to be implemented. However, Good Hope's

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

own public statements about its 2001 CON foreclosed that option in this case.

We conclude that these findings of fact are supported by competent record evidence. Based upon these and other findings of fact, the Agency reached conclusions of law including, *inter alia*, the following:

12. The Agency is authorized by N.C. Gen. Stat. § 131E-183(b) to adopt rules for the review of particular types of applications that will be used in addition to the statutory review criteria[.] . . . The Agency has adopted special Criteria and Standards for Computed Tomography[.]

. . . .

14. These performance standards for CT services were designed to help assure that there is a need for a proposed new CT scanner and that the new scanner will not result in an unnecessary duplication of services.

15. In view of the situation in which Good Hope found itself and the importance of having CT services at the new hospital, the Agency should have determined that the utilization of the CT scanner at Good Hope for the recent past as well as future years was irrelevant to the need for the CT scanner Harnett Health proposed to acquire as part of the proposed new hospital in central Harnett County.

16. Consistent with Governor Easley's stated reliance on the closure of Good Hope in writing a need for a new hospital in central Harnett County into the SMFP, as well as the Agency's own assumption that Good Hope would close, the Agency should have concluded that the historical utilization of Good Hope's CT scanner was irrelevant to its review of the Harnett Health Application, and that 10A NCAC 14C.2303(2) was void as applied to the Harnett Health Application.

17. For these reasons, the Agency also should have concluded that the future utilization of any CT scanner that was approved with the issuance of Good Hope's 2001 CON was irrelevant to its review of the Harnett Health Application and that 10A NCAC 14C.2303(3) was void as applied to the Harnett Health Application.

80          IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

18. Given the imminent closure of Good Hope Hospital and the elimination and reduction of services there . . . [t]he historical and future utilization of an existing CT scanner in a hospital that will close before Harnett Health's proposed new CT scanner is projected to be operational is not relevant to the question of need or duplication of services with regard to Harnett Health's proposed new CT scanner.

19. . . . The Agency erroneously determined that the Harnett Health could not acquire a CT scanner . . . solely upon the substandard utilization of the CT scanner at a hospital the Agency knew would soon close its doors.

. . . .

21. The CON Section's application of the CT Rule to the Harnett Health Application also was not in accordance with GHHS's lack of progress in developing a hospital pursuant to its 2001 CON.

. . . .

23. The Agency's application of the CT Rule in this manner frustrated the purpose and prevented proper implementation of the Certificate of Need Law, the SMFP, and the CT Rule itself.

24. The performance standards set forth in 10A NCAC 14C.2303(2) and (3) (collectively, the "CT Rule") are void as applied to the Harnett Health Application.

25. The condition imposed by the Agency . . . which precludes Harnett Health from acquiring a CT scanner, was not necessary to ensure that Harnett Health's proposal to develop a new community hospital which would include a new CT scanner would be consistent with the CT Rule or any other applicable review criteria. . . .

26. Because the utilization of Good Hope's CT scanner, as measured by the CT Rule, was the sole basis for the Agency's CT Condition, the Condition is also void and without merit.

Under N.C. Gen. Stat. § 150B-33(b) (2005), an "administrative law judge may . . . (9) Determine that a rule as applied in a particular case is void because it . . . (3) is not reasonably necessary to enable the agency to fulfill a duty delegated to it by the General Assembly." The

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

only reasonable interpretation of this statute is that the Agency may determine "that a rule as applied in a particular case is void" when the rule "is not reasonably necessary [in a particular case] to enable the agency to fulfill a duty delegated to it by the General Assembly." In the instant case, the Agency adopted the recommended decision of the Administrative Law Judge (ALJ), that as applied to the facts of this case, N.C. Admin. Code tit. 10A, r. 14C.2303(3) was irrelevant and counterproductive and, therefore, "void as applied" to the specific facts presented.

Defendant correctly observes that the general purpose of 10A NCAC 14C.2303(3) is "to limit the construction of health care facilities in North Carolina to those that are needed by the public and that can be operated efficiently and economically for its benefit." However, the Agency did not conclude that the rule was generally unnecessary. Rather, it found that Good Hope Hospital was about to close and would not be replaced or rebuilt within the pertinent time frame. The Agency determined that underutilization of Good Hope Hospital's CT scanner was due to its imminent closure and therefore was irrelevant to a determination of the present and future need for CT scanners in central Harnett County. Defendant fails to refute this conclusion, addressing only the general utility of the rule.

Defendant asserts that the "CT Performance Standard rule restricts new approvals where, for whatever reason, the existing and/or previously approved capabilities are not presently performing or not reasonably expected to perform at the levels required by the rule." (emphasis added). This contention, which Defendant fails to support with any authority, is contradicted by the Agency's statutory authority to waive application of the rule when in a particular case, it is not reasonably necessary to its analysis.

Defendant also argues that the Agency's conclusion, that Good Hope's CT scanner would not be in operation within the relevant time frame, is "defied by the record." Defendant bases this assertion solely on the fact that Good Hope still holds its 2001 CON. We previously determined that the Agency's findings of fact on this issue were supported by competent evidence in the record. This assignment of error is overruled.

We have considered GHHS's remaining arguments and find them to be without merit. For the reasons discussed above, we conclude that the Agency did not err and that its final agency decision should be

Affirmed.

Judges CALABRIA and STEPHENS concur.